IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DEWAYMON A. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 119-205 |
| ) | |
| SHERIFF RICHARD ROUNDTREE; ) | |
| CHRISTOPHER WEISMAN, Parole Officer; ) | |
| JOHN DOE, Deputy Sheriff; JANE DOE, ) | |
| Deputy Sheriff; CHRISTOPHER M. ) | |
| BRACEWELL, Laurens County Sheriff's ) | |
| Deputy; and AMANDA CANNEDY, Parole ) | |
| Officer, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Jenkins Correction Facility in Millen, Georgia, has filed an amended complaint brought pursuant to 42 U.S.C. § 1983, concerning events allegedly occurring at Charles B. Webster Detention Center in Augusta, Georgia. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I. SCREENING OF THE AMENDED COMPLAINT

#### A. BACKGROUND

Plaintiff names as Defendants: (1) Sheriff Richard Roundtree; (2) Christopher Weisman, Parole Officer; (3) John Doe, Deputy Sheriff; (4) Jane Doe, Deputy Sheriff; (5) Christopher M.

Bracewell, Lauren's County Sheriff's Deputy; and (6) Amanda Cannedy, parole officer. (Doc. no. 9, p. 1.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 3, 2019, Parole Officer Weisman obtained a warrant for the arrest of Plaintiff based on a parole violation for failing to pay an electronic monitoring fee and detained him at Charles B. Webster Detention Facility in Augusta, Georgia. (Id. at 4.) Parole Officer Weisman did not serve Plaintiff with a copy of the arrest warrant, which describes the alleged parole violation. (Id.) Plaintiff has been unsuccessful in his attempts to obtain the arrest warrant. (Id. at 4, 6.) Plaintiff attached a response from the State Board of Pardons and Parole regarding his open records requests for the arrest warrant, which stated under O.C.G.A. § 42-9-53 some document requests are confidential and not capable of being produced. (Doc. no. 9-1, p. 2.) However, the State Board of Pardons and Parole did produce seven pages of arrest warrants for separate criminal actions against Plaintiff. (Id. at 3-8.)

While detained for not paying his electronic monitoring fee on parole, Plaintiff did not receive an initial appearance before a judge within 72 hours after his arrest. (Doc. no. 9, p. 7.) On June 5, 2019, Parole Officer Weisman visited Plaintiff at Charles B. Webster Detention Facility with a "parole standard waiver" in hand, which stated Plaintiff violated his parole by not paying the electronic monitoring fee. (Id.)

On June 25, 2019, Plaintiff's sister, Quanita Willingham, called Satellite Tracking of People, LLC, which is allegedly responsible for the electronic monitoring system. (Id.) AN unidentified employee of Satellite Tracking of People, LLC told Ms. Willingham Plaintiff did not owe $922.50, which was the basis for his parole revocation, but that if Ms. Willingham

2

would pay $356.25, "they would give Plaintiff credit for time served and release" the hold on Plaintiff. (Id.) Ms. Willingham paid $356.25, but Plaintiff did not receive credit for time served and was not released. (Id.)

In addition to the parole violation warrant, Christopher M. Bracewell, a Laurens County Sheriff's Deputy, obtained three arrest warrants for Plaintiff for aggravated assault, rape, and terroristic threats. (Id. at 8.) Plaintiff was not served with these arrest warrants. (Id.) Plaintiff obtained these arrest warrants through his open records request to the State Board of Pardons and Parole mentioned above. (Id.) Plaintiff alleges he was not properly arrested on these charges because the Clerk's Office for Laurens County Superior Court stated in a letter they had no records of the arrest warrants. (Id.) Specifically, this letter, along with another letter from the Laurens County Sheriff's Office, stated these arrest warrants had not been properly served on Plaintiff yet and were held by the District Attorney's office. (Doc. no. 9-1, pp. 10-12.) Both letters also stated the Clerk's Office for Laurens County Superior Court will not receive the arrest warrants until the District Attorney's office forwards them. (Id.)

On June 27, 2019, Deputy Bracewell visited Plaintiff, along with Captain Reeves of the Richmond County Sheriff's Department, to obtain information from Plaintiff. (Doc. no. 9, p. 9.) Deputy Bracewell asked Plaintiff for his name, to which Plaintiff responded he wanted a lawyer. (Id.) Deputy Bracewell told Captain Reeves Plaintiff refused his Miranda rights and asked Captain Reeves to sign documents relating to his role as a witness. (Id.) Deputy Bracewell proceeded to obtain a DNA sample of Plaintiff through his saliva. (Id.) Plaintiff told him he wanted a lawyer twice, but Deputy Bracewell forced the Q-tip in Plaintiff's mouth without Plaintiff's consent. (Id.) Deputy Bracewell did not produce the warrant at the time of the swab.

3

(Id.)

After the saliva swab, Captain Reeves told Plaintiff he had a search warrant, but Plaintiff was not shown a search warrant. (Id. at 10.) Captain Reeves asked Plaintiff why he was at Charles B. Webster Detention Facility, and Plaintiff responded by explaining the parole warrant for failure to pay electronic monitoring fees. (Id.) Deputy Bracewell stated Plaintiff had a parole hearing on July 18, 2019, which Deputy Bracewell was going to attend. (Id.) Later on June 27, 2019, a jailer called Plaintiff out of his cell and handed him an envelope, containing a search warrant from the Magistrate Court of Chatham County, Georgia. Plaintiff attached the search warrant to his amended complaint. (Id.; doc. no. 9-1, p. 13.)

On July 3, 2019, Parole Chief William A. Edwards, Jr., visited Plaintiff to discuss Plaintiff's parole violations and determine whether Plaintiff wanted to sign a waiver. (Doc. no. 9, p. 11.) Going through the waiver, Plaintiff and Parole Chief Edwards crossed out Plaintiff's charges of aggravated assault, rape, and terroristic threats, but Plaintiff signed the waiver admitting he failed to pay the electronic monitoring fee. (Id.) Parole Chief Edwards stated they do not use Satellite Tracking of People, LLC, in Augusta, Georgia. (Id.) Also, Parole Chief Edwards stated he would recommend dismissal of Plaintiff's charges for aggravated assault, rape, and terroristic threats. (Id.)

On July 8, 2019, Parole Officer Amanda Cannedy visited Plaintiff with a standard waiver and final hearing notice. (Id. at 12.) She told Plaintiff he could either sign a standard waiver or go before the parole board. (Id.) Plaintiff chose to have a final hearing, stating he wanted his sister and mother as witnesses and to be represented by an attorney. (Id.) Parole Officer Cannedy also stated she wanted the parole board to know about the pending charges against

Plaintiff. (Id.) On July 9, 2019, unknown parole officers visited Plaintiff and asked him about his pending charges. (Id. at 13.) The visit was terminated once Plaintiff asked for a lawyer. (Id.) On July 15, 2019, two new parole officers transferred Plaintiff to Washington State Prison and transferred him again the next day to Jackson State Prison. (Id.)

On July 17, 2019, Parole Officer Weisman called Plaintiff's sister and advised her she would have to pay $566.60 for Plaintiff's electronic monitoring fee after already paying $356.23 on June 25, 2019. (Id.) Plaintiff's sister paid the remainder of the balance, but Plaintiff was not given credit for time served. (Id.) On July 18, 2019, Plaintiff went before the parole board via video conference and met with Deputy Bracewell, who also testified concerning the charges against Plaintiff. (Id. at 15.) Parole Officer Cannedy failed to subpoena any witnesses on Plaintiff's behalf or request an attorney. (Id.) The parole board found Plaintiff not guilty of failing to pay his electronic monitoring fee but guilty of a parole violation for the pending aggravated assault, rape, and terroristic threats charges. (Id.)

For relief, Plaintiff requests $5,000,000,000 from each Defendant for false imprisonment, cruel and unusual punishment, and denial of due process in connection with the arrest warrants issued against him and the forced DNA swab. (Id. at 5.) He also requests $5,000,000,000 in punitive damages against Parole Officer Cannedy for failing to subpoena witnesses or request counsel on Plaintiff's behalf. (Id.) Finally, Plaintiff requests Defendants be responsible for his court costs. (Id.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must

provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff No Longer Brings Any Claims Against Sheriff Roundtree and the Doe Defendants

Plaintiff's amended complaint supersedes and replaces in its entirety the previous complaint filed by Plaintiff. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016). Plaintiff's original complaint named four Defendants, but his amended complaint removed Sheriff Roundtree, John Doe, and Jane Doe. (Cf. doc. no. 1; with doc. no. XX.) Sheriff Roundtree, John Doe, and Jane Doe are not in the caption or the separate list of Defendants, and Plaintiff does not mention them anywhere in the statement of claim in the amended complaint. Nor does Plaintiff make any allegations associating Sheriff Roundtree, John Doe, and Jane Doe with a purported constitutional violation, and dismissal is therefore appropriate. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt

7

acts of the defendant caused a legal wrong."). Accordingly, Sheriff Roundtree, John Doe, and Jane Doe should be dismissed.

### 3. Plaintiff's Complaint is Barred Under Heck v. Humphrey

Plaintiff's complaint is barred under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The Supreme Court held, when an inmate's allegations rest on the invalidity of his imprisonment, his § 1983 claim does not accrue until that invalidity is proven. Id. In Heck, the Supreme Court further explained, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," then that § 1983 claim must be dismissed unless the conviction has already been invalidated. 520 U.S. at 487. In short, a claim for monetary damages that challenges Plaintiff's incarceration is not cognizable under § 1983. Id. at 483.

Plaintiff's claims are directly related to his incarceration as a result of his parole violation. Specifically, he seeks to challenge the validity of his incarceration upon being arrested for two separate parole violations. Although he was found not guilty as to the failure to pay electronic monitoring fees, Plaintiff concedes he was found guilty of violating his parole for aggravated assault, rape, and terroristic threats. Were these claims resolved in Plaintiff's favor before this Court, the outcome would inevitably undermine Plaintiff's state conviction. Vickers v. Donahue, 137 F. App'x 285, 290 (11th Cir. 2005). Plaintiff has not pointed to a "conviction or sentence reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487. Accordingly, Plaintiff's claims are barred under Heck.

### 4. Plaintiff Fails to State a Claim Based on Deputy Bracewell Obtaining a DNA Sample From Plaintiff

Plaintiff alleges Deputy Bracewell obtained a DNA sample from Plaintiff by forcing a Q-tip in Plaintiff's mouth without his consent. (Doc. no. 9, p. 9.) Plaintiff attached the search warrant to his amended complaint as well as the inventory confirming the DNA swab. (Doc. no. 9-1, p. 13, 14.)

The Fourth Amendment protection against unreasonable searches and seizures includes the right to be free from excessive force during the course of a search. See Los Angeles Cty. v. Rettele, 550 U.S. 609, 614 (2007) ("Unreasonable actions [during a search] include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time."). Thus, the Court looks to whether the force was objectively reasonable. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473-74 (2015). Whether an officer's use of force was excessive or reasonable "is a 'pure question of law,' decided by the court." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013)). To determine objective reasonableness, the Court considers

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473. Additionally, an officer has "the right to use some degree of physical coercion or threat thereof to effect [a warrant]." Lee v. Farro, 284 F.3d 1188, 1197 (11th Cir. 2002).

Plaintiff does not allege Deputy Bracewell used excessive force by striking Plaintiff anywhere on his body, and he does not allege any physical injury. (Doc. no. 9, pp. 9-10.) Plaintiff only alleges the Q-tip was inserted into his mouth and a DNA sample was obtained without his consent. (Id.) Because Deputy Bracewell obtained Plaintiff's DNA sample pursuant to a search warrant, and there was no injury or physical contact other than obtaining the DNA sample, Plaintiff fails to state a claim under §1983 for excessive force. See Skinner v. Sproul, Case NO. 1:14-CV-174-WLS-MSH, 2016 WL 796015, at *10-13 (M.D. Ga. Feb. 26, 2016), *adopted by* Case NO. 1:14-CV-174-WLS-MSH, doc. no. 110 (M.D. Ga. March 28, 2016) (ruling no excessive force when officers, without consent of pretrial detainee, obtained DNA sample pursuant to search warrant) (citing Rendelman v. Scott, 378 F. App'x 309, 313 (4th Cir. 2010) ("[T]he State's right to obtain the DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance. Otherwise, the State's right can be rendered meaningless by an inmate who refuses to grant permission for the cheek swab."); United States v. Bullock, 71 F.3d 171, 176 & n.4 (5th Cir. 1995) (holding officers may use force to execute blood sample warrant despite plaintiff's resistance and plaintiff "had no right to resist execution of [] search warrant"); United States v. Johnson, 462 F.2d 423, 427 (3d Cir. 1972) ("[A] person does not have the right to forcibly resist execution of a search warrant by a peace officer or a Government agent, even though that warrant may subsequently be held to be invalid.").

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief

may be granted and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of March, 2020, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA